**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 99-4397

CARLOS LOPEZ,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Spartanburg.
Henry M. Herlong, Jr., District Judge.
(CR-96-739)

Argued: May 5, 2000

Decided: July 13, 2000

Before WIDENER and MOTZ, Circuit Judges, and
Irene M. KEELEY, United States District Judge for the
Northern District of West Virginia, sitting by designation.

_____

Vacated and remanded by published opinion. Judge Motz wrote the
opinion, in which Judge Widener and Judge Keeley joined.

_____

**COUNSEL**

**ARGUED:** Andrew Ross Mackenzie, BARRETT & MACKENZIE,
L.L.C., Greenville, South Carolina, for Appellant. David Calhoun
Stevens, Assistant United States Attorney, Greenville, South Caro-
lina, for Appellee. **ON BRIEF:** J. Rene Josey, United States Attor-
ney, Greenville, South Carolina, for Appellee.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

A jury convicted Carlos Lopez of distribution of marijuana and conspiracy to possess with intent to distribute marijuana. The district court found that Lopez had distributed more that 1000 kilograms of marijuana and sentenced him to 188 months imprisonment. We vacate the sentence and remand for resentencing.

I.

Lopez was tried on January 25-26, 1999. Prior to trial, on September 11, 1998, Lopez gave a proffer statement with the expectation that he would be entering a plea agreement with the government. In the statement, he admitted distributing approximately 1200 kilograms of marijuana. A letter from the government to Lopez's attorneys set forth the terms of the proffer agreement,[1] including the conditions under which the information that Lopez provided in the statement could be used against him. After Lopez declined to enter a plea during three different change of plea hearings, Lopez proceeded to trial.

During the trial, Lopez actively participated in his own defense; he cross-examined a number of government witnesses and gave the closing argument. The government called several of Lopez's co-conspirators who testified about the quantities of marijuana they had purchased from Lopez. The government also called Special Agent Steve Russell of the Drug Enforcement Agency, who summarized the trial testimony and, based on that testimony, estimated that Lopez was

_____

[1] A "proffer agreement" is generally understood to be an agreement between a defendant and the government in a criminal case that sets forth the terms under which the defendant will provide information to the government during an interview, commonly referred to as a "proffer session." The proffer agreement defines the obligations of the parties and is intended to protect the defendant against the use of his or her statements, particularly in those situations in which the defendant has revealed incriminating information and the proffer session does not mature into a plea agreement or other form of cooperation agreement. See, e.g., Harry I. Subin et al., Federal Criminal Practice § 10.5 (1992).

2

responsible for approximately 1000 pounds (or 450 kilograms) of marijuana within the distribution network.

Following Lopez's conviction, the United States Probation Office prepared a pre-sentence report (PSR), which estimated that Lopez was responsible for distributing 1652.9 kilograms of marijuana, an estimate based on "confidential informant statements and seized cash." The PSR used this estimate to calculate Lopez's base offense level under U.S. Sentencing Guidelines Manual § 2D1.1 (1998). Lopez filed an objection to the PSR. In response, contending that Lopez breached the proffer agreement by taking a position at sentencing contrary to the information previously provided under that agreement, the government offered the testimony of Special Agent Russell regarding the substance of Lopez's proffer statement. The district court permitted the testimony as to the proffer over defense counsel's objection.

The district court ultimately found that Lopez had distributed more than 1000 kilograms of marijuana "based upon the testimony at trial." The district court noted that the proffer statement was "a second basis for making that finding," but that "it [was] not needed as far as a calculation as to the drug amount."

On appeal, Lopez challenges the district court's decision to allow testimony regarding the substance of his proffer statement as well as the court's factual determination regarding the drug quantity attributable to him. We consider each of these challenges in turn.

II.

Lopez first contends that the district court's consideration of his proffer statement during sentencing violated the terms of the proffer agreement. This contention raises a question of law that we review de novo. See, e.g., United States v. Blake , 81 F.3d 498, 503 (4th Cir. 1996).

Section 1B1.8 of the Sentencing Guidelines provides:

>    Where a defendant agrees to cooperate with the government
>    by providing information concerning unlawful activities of

3

others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

U.S.S.G. § 1B1.8(a); see also Fed. R. Crim. P. 11(e)(6); United States v. Cobblah, 118 F.3d 549, 551 (7th Cir. 1997) (explaining that a proffer agreement is a contract governed by its express terms); United States v. Shorteeth, 887 F.2d 253, 256-57 (10th Cir. 1989) (same).

Cases upholding the use of proffer statements during sentencing involve proffer agreements that explicitly allowed the government to use the information during sentencing under certain conditions precedent. For example, in Cobblah, the proffer agreement provided that if Cobblah testified contrary to the substance of the proffer statement or "otherwise present[ed] a position inconsistent with the proffer," the government could use the proffer "at sentencing for any purpose." 118 F.3d at 551 (emphasis added); see also United States v. Griffin, 84 F.3d 912, 919 (7th Cir. 1996) (proffer agreement incorporated similarly broad language).

The proffer agreement in the instant case does not contain language like that used in the agreements in Cobblah and Griffin, despite the government's attempt to characterize the agreement as such during the sentencing hearing. The proffer agreement here expressly provides that any self-incriminating information would "not be used in determining the applicable sentencing guideline range should [Lopez] be convicted." (Emphasis added.) The agreement permitted the government to use Lopez's proffer statement only under the following limited circumstances: for cross-examination if Lopez was a witness at trial and gave testimony "materially different from" the information he gave in his proffer; for prosecution of Lopez for perjury or making a false statement; or if Lopez breached the proffer agreement or a subsequent plea agreement.

The government brought the proffer statement to the district court's attention in response to Lopez's objection to the amount of marijuana specified in the PSR--1652.9 kilograms. In doing so, the government

4

misstated the terms of the proffer agreement, maintaining that the agreement permitted the government to use at the sentencing hearing "anything he told us" in the proffer statement"since he is saying [at sentencing] these figures [in the PSR] are wrong." Perhaps recognizing that it mischaracterized the proffer agreement before the district court, the government now contends that Lopez "constructively testified" when he participated in his own defense at trial and when he "personally responded" to the PSR at the sentencing hearing. As such, a "condition precedent to the use of his statements under the proffer agreement" was assertedly satisfied. Brief of Appellee at 10.**2**

We reject the government's argument and find that the use of the information in Lopez's proffer statement, provided to the district court through the testimony of Special Agent Russell at Lopez's sentencing hearing, clearly violated the terms of the proffer agreement. First, assuming that inconsistent trial testimony by Lopez would somehow permit use of the proffer at sentencing, Lopez never gave any actual or "constructive" testimony at trial. He did participate in his defense during trial, but he did not take the stand as a witness under oath. Lopez did accuse certain government witnesses of lying, and he questioned the admissibility of certain testimony, but he did so outside the presence of the jury. In addition, in his closing statement, Lopez challenged the amount of marijuana the government attempted to attribute to him during the trial, but, as the district court properly instructed the jury, "[t]he statements, objections, arguments by the defendant and by the attorney for the government [are] not evidence." Finally, Lopez's objection at the sentencing hearing to the statement in the PSR that he distributed 1652.9 kilograms of marijuana--assuming again that this objection somehow constitutes "constructive testimony"--was not inconsistent with, or "materially different from," the admission in his proffer statement that he had distributed 1200 kilograms of marijuana. After all, the PSR calculation was over 400 kilograms more than the amount that Lopez admitted distributing in his proffer.**3**

_____

**2** The government concedes that there is "no alternative theory of admissibility" for the proffer statement. Brief of Appellee at 10.
**3** Under U.S.S.G. § 2D1.1, the base offense level is 32 if the defendant distributed 1000 to 3000 kilograms of marijuana. Thus, although the dif-

5

In sum, no condition precedent to the use of the proffered information by the government was satisfied in this case. In light of this fact, as well as the government's explicit promise in the agreement that any self-incriminating information provided by Lopez would "not be used in determining the applicable sentencing guideline range should [Lopez] be convicted," we find that the district court erred in permitting the government at the sentencing hearing to use the information in the proffer statement to establish the drug quantity attributable to Lopez.[4]

III.

Lopez also contends that, absent the proffer information, the district court's holding that he distributed at least 1000 kilograms of marijuana finds inadequate support in the record. We review a district court's drug quantity determination for clear error. See 18 U.S.C. § 3742(e) (1994 & Supp. IV 1998); United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999).

_____

ference in drug quantities contained in the PSR and the proffer statement are immaterial under the Guidelines, this does not affect the appropriateness of Lopez's objection, particularly because the PSR stated only that the amount was based on "confidential informant statements and seized cash."

[4] We also note that, immediately following the proffer agreement's prohibition against the use of the proffered information for sentencing calculations, the agreement states that "this information will be made available to the Court for its consideration." We caution against such language as it would seem to "allow ambush by [a] broadly worded disclaimer[ ]." Shorteeth, 887 F.2d at 257. We agree with the Seventh Circuit's determination that

> the language and spirit of Guidelines § 1B1.8 require the agreement to specifically mention the court's ability to consider defendant's disclosures during debriefing in calculating the appropriate sentencing range before the court may do so. This is the most reasonable construction of the "except to the extent" language of § 1B1.8 and the commentary.

Id.

6

"When the amount of drugs for which a defendant is to be held responsible is disputed, the district court must make an independent resolution of the factual issue at sentencing." United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993) (citing U.S.S.G.§ 6A1.3(b)). "The Government bears the burden of proving by a preponderance of the evidence the quantity of drugs for which a defendant should be held accountable at sentencing." Id. (citing United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990)). In response to Lopez's objection to the PSR, the government first stated that the PSR's calculation of 1652.9 kilograms was based on Special Agent Russell's review of his notes from the interviews he conducted with all of the government's witnesses, presumably including those witnesses not called to testify at trial. The prosecutor explained that Special Agent Russell used the mean of the drug quantity range he received from each witness, in addition to the seizures of marijuana and cash, in making the calculation. Upon hearing this, the district court focused on evidence produced at trial, requesting that government counsel refresh its memory as to the trial testimony. The prosecutor stated that "from the transcript itself, there is no question there was over seven hundred kilograms from the witnesses that actually testified in front of you, possibly a little more than that." At one point during the hearing, after the prosecutor described the drug quantity information in the proffer statement, there was some confusion as to the measurements--pounds or kilograms--used in the recommended calculation.

Following Special Agent Russell's testimony at the sentencing hearing regarding the proffer, the district court stated that it was "inclined to find that the amount of drugs is more than one thousand kilograms, based upon the testimony at trial," and ultimately the court did find "that the guideline calculation as to the amount of drugs is correct. And as previously stated as far as the intention of the court, that that is based upon the record in the case, which consists of the testimony at trial which shows, and very conservatively, it's at least a thousand kilograms."**5**

_____

**5** In its final written judgment, the district court also purported to adopt the factual findings in the PSR, but government counsel expressly acknowledged at oral argument before us that in determining the drug quantity the district court relied solely on trial testimony and Lopez's proffer, not the amount specified in the PSR.

Our review of the record indicates that the trial testimony simply provides no basis for this finding. Much of that testimony was conflicting and imprecise, and the prosecutor not only stated during the sentencing hearing that that testimony could account for only seven hundred kilograms, or "possibly a little more than that," but also conceded that some witnesses testified at trial only in general terms and that he "did not get into any exact quantities with them . . . during the trial." Moreover, the government's chief witness, Special Agent Russell, testified at trial that based on the trial witnesses' testimony, Lopez had distributed only about 1000 pounds (or 450 kilograms) of marijuana.

We recognize that approximation of drug quantities is inherently imprecise, but the trial record here provides no sufficient basis for finding that Lopez distributed at least 1000 kilograms of marijuana.

IV.

For the foregoing reasons, we vacate Lopez's sentence and remand to the district court for further proceedings consistent with this opinion.

VACATED AND REMANDED