# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1992

_____

United States of America,          *
                                    *

          Appellee,          *
                                    *   Appeal from the United States

     v.                    *   District Court for the
                                    *   Southern District of Iowa.

Robert Shakir Perry,          *
                                    *

          Appellant.        *

_____

Submitted: February 18, 2011
Filed: May 20, 2011

_____

Before SMITH, GRUENDER, and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Following a jury trial, Robert Perry was convicted of nine felony counts arising out of various drug and firearm offenses. Perry now appeals his sentence, arguing that the district court ran afoul of U.S.S.G. § 1B1.8 when it calculated his advisory sentencing guidelines range using self-incriminating information disclosed by Perry during a proffer session with the Government. Perry also argues that the district court erred in refusing to reduce his offense level for acceptance of responsibility pursuant to § 3E1.1. We vacate Perry's sentence and remand for resentencing.

## I. BACKGROUND

On August 20, 2008, a federal grand jury returned a superseding indictment charging Perry with conspiring to distribute marijuana, a violation of 21 U.S.C. §§ 841(b)(1)(D), 846 (Count I); distributing marijuana, violations of § 841(a)(1), (b)(1)(D) (Counts II-V); possessing marijuana with the intent to distribute, a violation of § 841(a)(1), (b)(1)(D) (Count VI); possessing a firearm in furtherance of a drug trafficking offense, a violation of 18 U.S.C. § 924(c)(1)(A) (Count VII); possessing a firearm as a felon, a violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (Count VIII); illegally possessing body armor, a violation of 18 U.S.C. §§ 924(a)(1)(D), 931 (Count IX); and a forfeiture count, under 18 U.S.C. § 924(d), 28 U.S.C. § 2461(c).

Prior to trial, and in an apparent attempt to determine whether Perry could assist the Government in a pending criminal investigation, the parties agreed that he would proffer information regarding his knowledge of and involvement in illegal narcotics trafficking and weapons possession. In a letter to Perry's counsel, the Government set forth the terms of the proffer agreement, including the conditions under which the information that Perry provided could be used against him.[1] During the resulting proffer session, Perry provided information inculpating a co-conspirator in drug trafficking activity. He also disclosed self-incriminating information previously unknown to the Government, including information regarding the conspiracy's

---

[1] "A 'proffer agreement' is generally understood to be an agreement between a defendant and the government in a criminal case that sets forth the terms under which the defendant will provide information to the government during an interview, commonly referred to as a 'proffer session.' The proffer agreement defines the obligations of the parties and is intended to protect the defendant against the use of his or her statements, particularly in those situations in which the defendant has revealed incriminating information and the proffer session does not mature into a plea agreement or other form of cooperation agreement." *United States v. Lopez*, 219 F.3d 343, 345 n.1 (4th Cir. 2000).

commencement date and the quantities of drugs involved. Perry ultimately decided to proceed to trial, after which he was convicted of all nine felony counts.

The United States Probation Office prepared an initial presentence investigation report ("PSR"), in which it determined that Counts I-VI, VIII, and IX were groupable pursuant to U.S.S.G. § 3D1.2(c). When counts of conviction governed by different guidelines are grouped under § 3D1.2(c), the court is instructed to apply "the highest offense level of the counts in the Group." § 3D1.3(a). Of the eight grouped offenses, Count VIII—possessing a firearm as a felon—supplied the highest offense level, 20. *See* § 2K2.1(a)(4). The initial PSR also calculated a criminal history category of III.

In a supplemental sentencing brief, the Government argued that the PSR improperly measured Perry's criminal history from January 18, 2008—the date set forth in the indictment as the "commencement of the instant offense." Because § 4A1.2(e) contains a ten-year limitations period on the attribution of criminal history points for a "prior sentence," the PSR attributed criminal history points only for sentences imposed after January 18, 1998. The Government pointed out, though, that Perry admitted during his proffer session to embarking on the conspiracy on July 3, 2005. Thus, according to the Government, this earlier date should be treated as the offense's commencement date, and Perry's criminal history calculation should include sentences imposed from July 3, 1995, rather than from January 1998. The probation office agreed with the Government and increased Perry's criminal history category from III to VI to account for the additional prior sentences.

At the sentencing hearing, the Government also urged the district court to consider information disclosed during Perry's proffer session for purposes of determining his base offense level. In his proffer session, Perry admitted to participating in additional drug transactions that were not considered by the probation office in determining the quantity of drugs and, therefore, the base offense level for the drug distribution counts. Including these additional drug quantities would result

in the drug counts having a higher offense level, 30, *see* § 2D1.1; *id.* cmt. n.10(D)(i), than the offense level of 20 for the firearm count, *see* § 2K2.1(a)(4).

Perry countered that the terms of the proffer agreement triggered § 1B1.8, which, he maintained, precluded the court from using the contents of his proffer session in determining his guidelines range. The district court disagreed, concluding that § 1B1.8 did not bar consideration of the information and accepting the Government's invitation to adopt the higher base offense level of 30. The court then reduced Perry's offense level by two levels for his minor role, *see* § 3B1.2(b), but denied him a two-level reduction for acceptance of responsibility, *see* § 3E1.1(a). Based on a total offense level of 28 and a criminal history category of VI, Perry's resulting advisory guidelines range was 140 to 175 months. The district court varied downward to a term of 70 months on Counts I-VI, VIII, and IX, and also imposed the 60-month minimum consecutive sentence mandated by 18 U.S.C. § 924(c) on Count VII, resulting in a term of imprisonment of 130 months.

## II.    DISCUSSION

Perry first argues that the district court violated § 1B1.8 by considering the self-incriminating information gleaned during his proffer session in determining his advisory guidelines range. We review the district court's interpretation and application of the guidelines *de novo*. *United States v. Robinson*, --- F.3d ---, 2011 WL 1364460, at *4 (8th Cir. Apr. 12, 2011).

Section 1B1.8 provides:

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will

not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

Thus, when applicable, § 1B1.8 carves out a limited exception to the otherwise comprehensive mandate of 18 U.S.C. § 3661 that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may . . . consider for the purpose of imposing an appropriate sentence." *See generally United States v. Baird*, 218 F.3d 221, 227 (3d Cir. 2000). By its terms, § 1B1.8 is triggered when the Government agrees that qualifying self-incriminating information will not be "used against the defendant." At that point, the terms of the proffer agreement, rather than § 3661, control our analysis, and the sentencing court may consider information derived from the proffer session in determining the defendant's guidelines range only "to the extent provided in the agreement."[2] Hence, resolution of the parties' dispute in this case entails a twofold inquiry. First, we must ask whether the proffer agreement provides that the self-incriminating information Perry disclosed would not be "used against" him, thus placing the resulting proffer within the coverage of § 1B1.8. Should we answer this first question in the affirmative, we next must

---

[2] The Government contends in passing that the proffer agreement was not an "agreement to cooperate" under § 1B1.8, but was, instead, an agreement to determine whether Perry *could* cooperate. Thus, in the Government's view, the district court may use self-incriminating information educed by virtue of such an agreement to determine a defendant's guidelines range regardless of the assurances made in the agreement. We reject this argument, as Perry's agreement to provide "*completely* truthful" information concerning "potential criminal activity" "which may be of assistance in a criminal investigation," *see* Proffer Agreement preamble, ¶¶ 1, 2 (emphasis in original), decidedly constitutes an "agree[ment] to cooperate with the government by providing information concerning unlawful activities of others," § 1B1.8; *see also United States v. Davila*, 964 F.2d 778, 784 n.4 (8th Cir. 1992) (indicating that proffer agreements are subject to § 1B1.8).

determine the extent, if any, to which the proffer agreement nonetheless allows for use of Perry's proffer statement "in determining the applicable guideline range."

Paragraph 6 of the proffer agreement—entitled "No Direct Use"—provides that "[t]he government agrees that statements or information contained in [Perry's] proffer may not be used in the government's case-in-chief against [Perry] should a trial be held." Perry argues that this provision places the proffer agreement within § 1B1.8's coverage of agreements "that self-incriminating information . . . will not be used against the defendant." The Government responds that, because Paragraph 6's usage limitation is narrow and well-delineated, "[n]othing in the proffer agreement suggested or implied that the government was affording Perry's statements sentencing immunity." The text of § 1B1.8 sheds little light on what degree of usage limitation triggers its application. That is, while an unqualified promise not to "use" a defendant's proffer for *any* purpose unquestionably would place the agreement within § 1B1.8, it is less evident whether, at the other end of the spectrum, a modest promise not to use the information in certain, well-defined circumstances likewise would rouse the full panoply of § 1B1.8 coverage.

We conclude that an absolute and unqualified promise not to "use" the self-incriminating information is not required to bring an agreement within the bounds of § 1B1.8. While the scope of an agreement's usage limitations may well bear on the question whether the agreement allowed for use of the defendant's statements in determining his guidelines range—the second step of our inquiry—it does not affect our threshold inquiry concerning whether § 1B1.8 applies at all. In *United States v. Cox*, 985 F.2d 427 (8th Cir. 1993), for instance, we held § 1B1.8 implicated by a similarly circumscribed promise that "[n]o testimony or other information provided by you . . . will be used against you for the purpose of bringing additional criminal charges," *id.* at 431 (second alteration in original); *see also United States v. Robinson*, 898 F.2d 1111, 1117 (6th Cir. 1990) (holding that an agreement "not to file additional charges" based on the defendant's statements "seems to be one contemplated by

-6-

§ 1B1.8"); *United States v. Shorteeth*, 887 F.2d 253, 256 (10th Cir. 1989) (holding § 1B1.8 applicable where the Government agreed that "no separate federal prosecutions will be instituted against [defendant] . . . for conduct and acts committed by her related to information she provides the Government during . . . debriefings" (alterations in original)); *United States v. Cocilova*, 584 F. Supp. 2d 885, 893 (W.D. Va. 2008) (holding § 1B1.8 applicable where the Government agreed that "it will not introduce in a criminal prosecution of [the defendant], in its case-in-chief at trial, any of the statements [made] pursuant to this agreement"). Likewise here, we hold that the usage restriction in Paragraph 6 triggers § 1B1.8.

Having determined that the proffer agreement is encompassed within § 1B1.8's coverage, we now must inquire whether the agreement nonetheless allows for use of Perry's proffer statement "in determining the applicable guideline range." Perry relies heavily on *Shorteeth*, in which the Tenth Circuit maintained that "the language and spirit of . . . § 1B1.8 require the agreement to specifically mention the court's ability to consider defendant's disclosures . . . in calculating the appropriate sentencing range before the court may do so." 887 F.2d at 257. This circuit has never adopted such a talismanic approach. *See Cox*, 985 F.2d at 431 (holding that § 1B1.8 allowed for use of a debriefing statement in calculating the defendant's guidelines range where the plea agreement simply provided that the defendant's debriefing statement "may be considered by the court . . . to determine the length of [his] sentence" (emphasis omitted)). Generally, we interpret contracts between defendants and the Government "according to general contractual principles," *see United States v. Yellow*, 627 F.3d 706, 708 (8th Cir. 2010) (quoting *United States v. Thompson*, 403 F.3d 1037, 1039 (8th Cir. 2005)), and we find no basis in the text or the commentary of § 1B1.8 that either requires or permits us to depart from those settled principles of interpretation in the present instance. Thus, as in other contexts, we must "try to discern the intent of the parties 'as expressed in the plain language of the agreement when viewed as a whole.'" *United States v. Taylor*, 258 F.3d 815, 819 (8th Cir. 2001) (emphasis omitted) (quoting *United States v. Kelly*, 18 F.3d 612, 616 (8th Cir. 1994)).

In its brief, the Government asserts that Paragraph 10 of Perry's proffer agreement specifically provides for the use of the information disclosed during the proffer session in determining his guidelines range: "[Perry] understands that if [he] either pleads guilty or is convicted at trial, the government, pursuant to 18 U.S.C. § 3661, must provide to [Perry's] sentencing judge the contents of the proffer." This language does not suffice. Paragraph 10 simply states that the Government will *provide* information derived from the proffer session to the sentencing court, but it says nothing of the court's ability to *consider* that information in calculating Perry's sentencing guidelines range. This distinction is crucial. While § 1B1.8 can preclude a sentencing court from considering qualifying self-incriminating information in determining a defendant's guidelines range, the provision pointedly "does not authorize the government to withhold information from the court." § 1B1.8 cmt. n.1. For this reason, Paragraph 10's reference to "providing" the contents of Perry's proffer session to the sentencing court does not fit the exception in § 1B1.8 for agreements that allow for the use of self-incriminating information in determining a defendant's guidelines range—a point that the Government conceded at oral argument before this court.

As discussed above, though, the absence of a provision "specifically mention[ing] the court's ability to consider defendant's disclosures . . . in calculating the appropriate sentencing range," *see Shorteeth*, 887 F.2d at 257, is not necessarily fatal to the Government's position, so long as the agreement, when viewed as a whole, otherwise conveys the parties' intent to allow the court to use the information derived from the proffer session for such a purpose. *See Cox*, 985 F.2d at 431 ("[W]hat's important is the Defendant understand that what he tells the Government will be used to determine the length of his sentence." (quoting sentencing hearing transcript)).

The Government contends that Paragraph 6 communicated the parties' intent to allow the information disclosed during Perry's proffer session to be used in calculating his guidelines range. According to the Government, because Paragraph

6 prohibits the use of the information only in the Government's case-in-chief against Perry, by omission the proffer agreement indicates that the information can be used without limitation in all other proceedings and for all other purposes, including calculating Perry's sentencing guidelines range. *Cf. United States v. Transfiguracion*, 442 F.3d 1222, 1232 (9th Cir. 2006) (applying the *expressio unius* canon of statutory interpretation to a plea agreement). We agree with the Government that, viewed in isolation, this could be a reasonable interpretation of Paragraph 6. Applying the same principle of interpretation to Paragraph 7, however, leads to the opposite result. Paragraph 7 provides:

> If [Perry] should testify materially contrary to the substance of the proffer, or otherwise present in an legal proceeding [sic] a position materially inconsistent with the proffer, the proffer may be used against [him] as impeachment or rebuttal evidence, or as the basis for a prosecution for perjury or false statement.

The phrase "if [Perry] should testify materially contrary to the substance of the proffer" creates a condition precedent to using the contents of Perry's proffer session against him in "any legal proceeding."[3] *See Baird*, 218 F.3d at 229. That is, the information derived from the proffer session could be used against Perry only if he subsequently contradicted statements made during the proffer session—and even then, only as "impeachment or rebuttal evidence, or as the basis for a prosecution for perjury or false statement." Paragraph 7 is, of course, irreconcilable with the Government's interpretation of Paragraph 6. On the one hand, Paragraph 6 conveys that, with the exception of the Government's case-in-chief against Perry, the information derived from Perry's proffer session may be used without limitation. On

---

[3] It is unclear whether the term "an legal proceeding" is intended to signify "a legal proceeding" or "any legal proceeding." Any distinction between the two terms would appear to be immaterial in the present case, however, as the unqualified use of either "a" or "any" is broad enough to encompass all "legal proceedings," including a sentencing hearing.

the other hand, Paragraph 7 conveys that the same information may *not* be used in *any* legal proceeding, such as for purposes of guidelines calculation at a sentencing hearing, unless Perry subsequently presents a materially inconsistent position.[4] Thus, the proffer agreement, viewed as a whole, ambiguously delineates the limitations on the use of information derived from Perry's proffer and must, accordingly, be construed against the Government. *See United States v. Stobaugh*, 420 F.3d 796, 800 (8th Cir. 2005). As a result, we conclude that the proffer agreement did not allow for the use of the information disclosed during Perry's proffer session in determining his sentencing guidelines range. Hence, the district court erred by doing so. *See Gall v. United States*, 552 U.S. 38, 51 (2007) (observing that procedural error includes "failing to calculate (or improperly calculating) the Guidelines range").[5]

Perry next contends that the district court erred when it denied his request for a two-level reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. "When

---

[4] Paragraph 9 creates similar problems for the Government's theory. It provides that "[t]he government may make use of any statements or information provided by [Perry's] proffer, without limitation, in any prosecution or investigation concerning any crime of violence or any crime that occurs after the date of this letter." Such a reservation would be largely superfluous if, as the Government now contends, the proffer agreement constrained no more than its direct use of the information in the Government's case-in-chief at Perry's trial. *See* Richard A. Lord, Williston on Contracts § 32:5, at 427 (4th ed. 1999) ("To the extent possible, . . . every word, phrase or term of a contract must be given effect.").

[5] The Government does not argue that the error would be harmless, and its failure to do so "waives any right to such review." *United States v. Williams*, 627 F.3d 324, 329 (8th Cir. 2010) (quoting *United States v. Cacioppo*, 460 F.3d 1012, 1025-26 (8th Cir. 2006)). Even if we were to exercise our discretion to overlook the waiver, *see Lufkins v. Leapley*, 965 F.2d 1477, 1481 (8th Cir 1992), we would be constrained to conclude that the error was not harmless, as "there is no clear indication on the record that the district court would have imposed the same sentence if [the defendant's] legal argument had prevailed," *United States v. Spikes*, 543 F.3d 1021, 1025 (8th Cir. 2008).

reviewing the grant or denial of a reduction for acceptance of responsibility, we afford great deference to the determination of the district court judge, who is in a unique position to evaluate whether a defendant has accepted responsibility for his offense." *United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 954 (8th Cir. 2001) (quoting *United States v. Field*, 110 F.3d 592, 594 (8th Cir. 1997)). Thus, we review for clear error. *Id.* In the present case, Perry elected to proceed to trial. The commentary accompanying § 3E1.1 explains that the acceptance of responsibility "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt." § 3E1.1 cmt. n.2. A defendant who has proceeded to trial may overcome this bar to a reduced sentence in the rare instance when the issues for trial did not relate to factual guilt. *Id.*; *see also United States v. Chapman*, 356 F.3d 843, 847-48 (8th Cir. 2004). Perry's case does not present such an instance; at trial, he cross-examined witnesses and moved for a judgment of acquittal on the ground that the Government failed to prove identity. *See United States v. Bell*, 411 F.3d 960, 963-64 (8th Cir. 2005). Hence, the district court did not clearly err in refusing to grant a two-level reduction for acceptance of responsibility.[6]

## III.   CONCLUSION

For the foregoing reasons, we vacate Perry's sentence and remand to the district court for further proceedings not inconsistent with this opinion.

———————————————

---

[6] Perry's contention that fear of reprisal informed his decision not to cooperate and to proceed to trial does not alter our conclusion. "[T]he security of not being a squealer . . . [is] not [a decision] the sentencing guidelines recognize as worthy of excusing the need to accept responsibility before trial to win a reduced sentence." *United States v. Morgano*, 39 F.3d 1358, 1378 (7th Cir. 1994).