NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11375

COMMONWEALTH  vs.  OMAY TAVARES.

Suffolk.     October 3, 2022. - February 24, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


Homicide.  Constitutional Law, Assistance of counsel.  Practice,
    Criminal, Assistance of counsel, New trial, Capital case.
    Evidence, Exculpatory.



    Indictments found and returned in the Superior Court
Department on April 1, 2010.

    A motion for a new trial, filed on January 7, 2019, was
heard by Beverly J. Cannone, J.


    Cailin M. Campbell, Assistant District Attorney, for the
Commonwealth.
    Elizabeth A. Billowitz for the defendant.


    BUDD, C.J.  On October 17, 2011, the defendant, Omay

Tavares, was convicted of murder in the first degree in

connection with the January 7, 2010, shooting death of George

Thompson.[1]  In 2019, the defendant filed a motion for a new trial asserting ineffective assistance based on trial counsel's failure to investigate exculpatory evidence provided by the Commonwealth.[2]  After an evidentiary hearing, the motion judge, who was not the trial judge, allowed the defendant's motion. The matter is now before this court on the Commonwealth's appeal from the motion judge's ruling.  We affirm.

Background.  We present the relevant factual and procedural background as taken from the record, reserving certain details for the discussion.

1.  Pretrial.  The defendant initially was assigned counsel from the Committee for Public Counsel Services.  However, a family friend hired trial counsel to represent the defendant for a flat fee of $5,000, learning only after the fact that counsel recently had completed a one-year bar suspension for gross incompetence resulting in his clients' imprisonment.[3]  In preparation for what would be his first murder trial as lead attorney, counsel requested and received court-ordered funds to

---

[1] The defendant also was convicted of unlawful possession of a firearm, unlawful carrying of a loaded firearm, and unlawful possession of ammunition.

[2] The defendant's direct appeal has been stayed pending disposition of his motion for a new trial.

[3] Counsel disclosed his disciplinary history to the defendant's family friend only after she confronted him with the report of his suspension from the Board of Bar Overseers.

hire experts in the fields of cell site location information (CSLI) and ballistics, but did not retain an investigator to find or speak with witnesses.

On September 23, 2011, approximately two weeks before the trial was scheduled to begin, the prosecutor advised counsel that the Boston police department was in possession of a proffer from a confidential informant containing information about an alleged third-party shooter involved in the victim's murder. Counsel was not provided with a redacted copy of the proffer until October 4, 2011, one day before trial was to begin.[4]

According to the proffer, two individuals, "H.H.," who was armed with a Taurus nine millimeter handgun, and "another man," went to the victim's apartment intending to rob the victim of money and marijuana. When the victim lunged for the gun, he was shot and killed.[5] Trial counsel failed to request a continuance to investigate the information contained in the proffer letter and failed to inform the defendant that it existed.

2. Trial. The evidence presented to the jury was as follows. On the evening of January 7, 2010, a light-skinned male, approximately six feet tall, wearing a hooded sweatshirt

---

[4] It is not apparent from the record why there was a delay in providing trial counsel with a redacted copy of the proffer.

[5] The proffer did not name the other man but described him as having been arrested for the murder.

and skullcap, and identifying himself as "O," came to the victim's apartment. A conversation between O and the victim escalated to a loud disagreement, and then O pulled a gun from his waistband, pointed it at the victim, and fired three shots. The medical examiner later determined that the victim died from multiple gunshot wounds to the head and torso. The bullets were shot from a nine millimeter firearm.

An investigation revealed that the last call the victim received prior to his death came from the defendant's cell phone. CSLI data indicated that the defendant's cell phone activated the cell tower closest to the victim's apartment building at approximately the same time as the shooting, and a latent fingerprint recovered from the exterior doorknob of the victim's apartment belonged to the defendant. Investigators also recovered a photograph of a hand holding a firearm, taken on January 14, 2010, from the defendant's cell phone. Two witnesses who saw the shooter at the victim's apartment on the night of the killing were shown a photographic array that included the defendant's photograph, but neither was able to make a positive identification.

While being interviewed by police, the defendant acknowledged that he and the victim previously had had a disagreement over the price at which the victim had sold the defendant some marijuana. After the interview, the defendant

sent a text message to an unknown individual that stated, "Yo, I got bagged."  During a search of the defendant's home, police recovered marijuana and $500 cash, as well as clothing matching the description of clothing worn by the individual who came to the victim's apartment on the night of the shooting.  The murder weapon was not recovered.

At trial, counsel argued that police failed to investigate other leads, see Commonwealth v. Bowden, 379 Mass. 472 (1980), and that the defendant had been misidentified as the shooter.[6]  However, he failed to use any of the information contained in the proffer that supported these arguments.  Indeed, when H.H., the man alleged in the proffer to be a third-party culprit, appeared in court on the first day of jury empanelment and, in counsel's presence, was ordered by the judge to be available for trial, counsel did not request a continuance to interview him, or take any other measures to capitalize on the presence of H.H.  The defendant was convicted of murder in the first degree on theories of deliberate premeditation and extreme atrocity or cruelty.

3.  Posttrial.  When the defendant obtained new counsel, he learned of the proffer letter and moved for a new trial based on

---

[6] To support the misidentification argument, trial counsel called the defendant's mother, girlfriend, and work supervisor as witnesses to argue that the defendant's traits and habits were inconsistent with the description of the shooter.

ineffective assistance of counsel.  Trial counsel submitted an affidavit in support of the motion and testified at the evidentiary hearing.  Although he recalled being made aware of the proffer letter containing potential third-party culprit evidence, he did not recall investigating it.

The motion judge concluded that trial counsel provided constitutionally ineffective assistance and allowed the defendant's motion for a new trial.  The Commonwealth timely appealed.

Discussion.  1.  Relevant standards for ineffective assistance of counsel claim.  A judge "may grant a new trial at any time if it appears that justice may not have been done." Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). Where a motion for a new trial is based on ineffective assistance of counsel, the defendant must show that (1) the "behavior of counsel [fell] measurably below that which might be expected from an ordinary fallible lawyer" and (2) such failing "likely deprived the defendant of an otherwise available, substantial ground of defence."  Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

We review the judge's decision to grant the defendant a new trial for error of law or abuse of discretion.  Commonwealth v. Lessieur, 488 Mass. 620, 627 (2021).  Citing Commonwealth v. Diaz Perez, 484 Mass. 69, 74 (2020), the defendant contends that

we should employ the substantial likelihood of a miscarriage of justice standard pursuant to G. L. c. 278, § 33E (§ 33E).  In Diaz Perez, we stated that because the case involved murder in the first degree, we reviewed the judge's decision to grant a motion for a new trial based on an ineffective assistance claim under the § 33E standard.  Id.  However, that was incorrect because the defendant's direct appeal had been stayed pending the outcome of the appeal from the decision on the new trial motion.  Id. at 71.  As the § 33E standard applies only in connection with the plenary review of direct appeals from convictions of murder in the first degree, it was not the appropriate standard to apply to review the decision to grant a new trial alone.[7]  See Commonwealth v. Alvarez, 433 Mass. 93, 101

---

[7] We acknowledge that we have not always specifically stated that the § 33E standard is applicable when reviewing decisions on ineffective assistance of counsel claims only where we are deciding direct appeals from convictions of murder in the first degree.  Compare, e.g., Commonwealth v. Ayala, 481 Mass. 46, 62 (2018), Commonwealth v. Kolenovic, 478 Mass. 189, 192-193 (2017), Commonwealth v. Laurore, 437 Mass. 65, 72 (2002), Commonwealth v. Frank, 433 Mass. 185, 187 (2001), and Commonwealth v. Coonan, 428 Mass. 823, 826-827 (1999), with Commonwealth v. Yat Fung Ng, 489 Mass. 242, 249 (2022), S.C., 491 Mass. 247 (2023), Commonwealth v. Hung Tan Vo, 427 Mass. 464, 469 (1998), Commonwealth v. Plant, 417 Mass. 704, 715 (1994), and Commonwealth v. Wright, 411 Mass. 678, 682 (1992), S.C., 469 Mass. 447 (2014).  We acknowledge that this has led to some confusion.  However, we are not aware of any other instances beyond Diaz Perez in which we improperly applied the § 33E standard in similar circumstances.  We note that the defendant was not prejudiced by the error as we affirmed the judge's decision to grant a new trial.  See Diaz Perez, 484 Mass. at 70.  Moreover, we do not suggest that the case would

n.8 (2000), citing Commonwealth v. Hill, 432 Mass. 704, 710 n.14 (2000) ("Where the defendant's motion for a new trial was allowed and the matter is before us on the Commonwealth's appeal, we do not apply the substantial likelihood of a miscarriage of justice standard provided by . . . § 33E").

2. Application. "The duty to investigate is one of the foundations of the effective assistance of counsel, because counsel's strategic decisions can be adequate only if counsel is sufficiently informed about the available options." Commonwealth v. Long, 476 Mass. 526, 532 (2017). Where an ineffective assistance of counsel claim is brought, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland v. Washington, 466 U.S. 668, 691 (1984). That is, although trial counsel need not descend into every rabbit hole, he or she "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id.

Here, counsel was informed of a proffer indicating that someone other than his client had gone to the victim's home on the evening of the killing with an intent to rob the victim and

---

have turned out differently under the correct standard:  as the prevailing party below, the defendant would have benefited from the deferential error of law or abuse of discretion standard of review.

carrying the same caliber firearm as that used in the killing. Qualitatively different from a rumor or neighborhood gossip, a proffer is a written legal agreement between the government and an individual in which the individual agrees to provide information about one or more crimes to the government in exchange for the government's promise that any information provided by the individual will not be used against him or her later in court.  See United States v. Lopez, 219 F.3d 343, 345 n.1 (4th Cir. 2000).  Cf. Commonwealth v. Bolduc, 375 Mass. 530, 540 (1978) (mere speculation that exculpatory facts exist insufficient to support ineffective assistance claim).

Given the significance of the information, counsel was required to provide a satisfactory reason for not making use of it.  At the motion hearing, counsel asserted that he did not request a continuance to investigate the proffer because he feared his witnesses might not be available at a later date. The judge rejected this explanation as a reasonable tactical decision, noting that "there [was] no evidence in the record to support that premise," and that, at any rate, the defendant's primary witness "could not provide a confident alibi."  The judge thus concluded that the decision not to investigate fell "measurably below that which might be expected from an ordinary fallible lawyer."  See Alvarez, 433 Mass. at 101-102 (no reasonable tactical judgment in failing to obtain or review

defendant's medical evidence where such investigation would have aligned with defense at trial); Commonwealth v. Haggerty, 400 Mass. 437, 442 (1987) ("Failure to investigate the only defense a defendant has, if facts known to or with minimal diligence accessible to counsel support that defense, falls beneath the level of competency expected").

The Commonwealth denies that counsel acted unreasonably, arguing that the proffer evidence was more inculpatory than exculpatory because it supported the theory that the defendant was involved in the shooting. We do not define the term "exculpatory" as narrowly as does the Commonwealth here. "[E]vidence is exculpatory if it provides some significant aid to the defendant's case, whether it [(1)] furnishes corroboration of the defendant's story, [(2)] calls into question a material, although not indispensable, element of the prosecution's version of the events, or [(3)] challenges the credibility of a key prosecution witness" (quotation and citation omitted). Commonwealth v. Pope, 489 Mass. 790, 800 (2022).

Here, the proffer evidence had the potential to aid the defendant in each of these ways. It suggested that H.H. was the shooter, thereby corroborating the mistaken identity claim; it undercut the Commonwealth's theory that the defendant was the sole shooter in the victim's murder; and it challenged the

credibility of the two witnesses who reported that only one man came to the victim's home on the night of the shooting.

The judge additionally concluded that the second prong of the Saferian test was met, as the proffer evidence would have bolstered the defendant's Bowden defense by suggesting that the Commonwealth failed to investigate the possibility that someone other than the defendant committed the crime,[8] and by supporting a new and compelling third-party culprit defense. See Commonwealth v. Alcide, 472 Mass. 150, 161-163 (2015) (trial counsel's failure to introduce significant discovery that supported defendant's third-party culprit defense constituted ineffective assistance); Commonwealth v. Phinney, 446 Mass. 155, 162-166 (2006), S.C., 448 Mass. 621 (2007) (trial counsel's failure to read and use exculpatory police reports constituted ineffective assistance).

On this point, the Commonwealth contends that even if the proffer evidence had been used, it would have supported another theory under which the jury could have chosen to convict the defendant:  felony-murder.  This argument is unavailing.  The Commonwealth's theory at trial was that the defendant was the

---

[8] According to the judge's memorandum of decision, at the time of the murder both H.H. and the confidential informant were members of a gang that "had frequently been tipped off by members of the [Boston police department] as to its and [F]ederal investigations into [the gang's] activities."

lone shooter. The prosecutor neither presented evidence of a joint venture, nor requested instructions on felony-murder. Thus, what otherwise might have happened if the case had been tried differently is purely speculative.[9] Cf. Commonwealth v. Quiles, 488 Mass. 298, 306-307 (2021), cert. denied, 142 S. Ct. 1237 (2022) (conviction upheld where jury were instructed on and had clear opportunity to consider alternate theory of felony-murder even though defendant was not charged with predicate felony).

The judge noted that the Commonwealth's evidence against the defendant was "strong," but "not overwhelming." Where, as here, use of the proffer evidence could have raised a reasonable doubt as to whether the defendant murdered the victim, we cannot say that the judge erred or abused her discretion in concluding that counsel's assistance constitutionally was ineffective.

Order allowing motion for a
new trial affirmed.

---

[9] The Commonwealth also argues that the proffer would have been inadmissible at trial because it contains multiple layers of hearsay. Regardless of its admissibility, on which we do not opine, the proffer contained evidence that the defendant could have used in the preparation of his defense.